# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

**No. 20-7105**

**September Term, 2021**

FILED ON: JANUARY 11, 2022

J.T.,

APPELLANT

v.

DISTRICT OF COLUMBIA,

APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:19-cv-00989)

———

Before: MILLETT and KATSAS, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

**J U D G M E N T**

This appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs and oral argument of the parties. The Court has afforded the issues full consideration and has determined that they do not warrant a published opinion. *See* Fed. R. App. P. 36; D.C. Cir. R. 36(d). It is hereby

**ORDERED** that the judgment of the district court be **AFFIRMED**.

The Individuals with Disabilities Education Act (IDEA) requires the states, in exchange for federal funds, to provide a free appropriate public education (FAPE) to children with disabilities. 20 U.S.C. § 1412(a)(1); *see also id.* § 1401(31) (defining "[s]tate" to include the District of Columbia). A FAPE is tailored to the needs of a child through an individualized educational program (IEP), which is a written statement setting forth the special education and related services to be provided. *Id.* §§ 1401(14), 1414(d)(1)(A). The state must provide the child with an "educational placement" that complies with the IEP. *Id.* § 1412(a)(5); *see* 34 C.F.R. § 300.116(b)(2). The IDEA does not define the term "educational placement," but it entitles parents to be "members of any group that makes decisions on the educational placement." 20 U.S.C. § 1414(e). A parent displeased with an educational placement may seek an administrative hearing, *id.* § 1415(f)(1), and then judicial review, *id.* § 1415(i)(2)(A).

This appeal is about whether the District of Columbia selected an appropriate school for V.T., a child with autism, for the 2018–19 school year. V.T.'s IEP for that year, which was developed in conjunction with his parents, required minimal noise in his classroom and a maximum class size of six students.

Selena Barlow, a case worker with the D.C. Public Schools (DCPS), emailed the final IEP to J.T., who is V.T.'s mother, and her counsel. Barlow listed some possible schools—including the Frost School—and asked them to "[p]lease let me know if there are other schools that you are interested in." J.A. 137. Counsel voiced no objection, but instead promised to "respond quickly to any schools as they contact us." *Id.* The same week, Frost invited J.T. to visit its campus. She did so twice. Shortly thereafter, DCPS informed her that Frost had accepted V.T.

Without explanation, J.T. declined Frost's offer. Barlow sought to find out her concerns. Barlow asked if J.T. could "send her concerns in writing, call me with [counsel] on the line, or have a meeting with Frost." J.A. 180. Even though the school year was already underway, J.T.'s counsel took a week to respond with the family's concerns. Barlow then reviewed these objections with Frost and confirmed to counsel that the school could fulfill V.T.'s IEP. Soon after that exchange, J.T. filed a complaint. She claimed that DCPS had impermissibly excluded her from the selection of a school and that Frost was an inappropriate placement because it was too far away from V.T.'s home, the classrooms were too noisy, and the class size exceeded six students. In a 17-page decision, a hearing officer rejected these contentions and dismissed the complaint.

After J.T. rejected Frost, DCPS concentrated its efforts on enrolling V.T. in the Community School of Maryland (CSM). The school's director of education, Scott Murtha, gave J.T. a tour, and his impression was that she "thought the school was great." J.A. 624. CSM accepted V.T., but J.T. again declined the offer. She then filed another complaint alleging that DCPS had excluded her from school selection and that CSM was an inappropriate placement for largely the same reasons that Frost was. In a 16-page decision, the hearing officer rejected these contentions as well.

J.T. then sought judicial review, and the district court granted summary judgment to DCPS on the claims at issue here. *J.T. v. District of Columbia*, 496 F. Supp. 3d 190, 194, 213 (D.D.C. 2020). We have jurisdiction over J.T.'s appeal under 28 U.S.C. § 1291, and we affirm.

J.T. claims that DCPS abridged her right to participate in deciding the educational placement of her child. In another context, we have stated that an "educational placement" does not necessarily include the selection of a specific institution. *Lunceford v. D.C. Bd. of Educ.*, 745 F.2d 1577, 1582 (D.C. Cir. 1984). J.T. asks us to disavow that statement as ill-considered dicta that later decisions have displaced. But even if J.T. did have a right to participate in selecting a specific school for V.T., which we assume *arguendo*, she still must show that any procedural violation "significantly impeded [her] opportunity to participate in the decisionmaking process." 20 U.S.C. § 1415(f)(3)(E)(ii)(II). Here, as both the hearing officer and the district court explained, DCPS actively worked to involve J.T. in school selection. J.T. had many opportunities to raise concerns on that point, including on school visits and in ongoing discussions with Barlow. And she did convey various concerns in those discussions. In sum, DCPS did not significantly impede her participation rights.

2

As to substance, J.T. asserts that Frost and CSM were inappropriate placements for three reasons. First, she protests the long commute to both schools, as V.T. becomes upset or suffers motion sickness during long car rides. But so long as it provides a placement that "meet[s] the standards of the State educational agency," a school district need only provide education and related services, including transportation, "in conformity with" the IEP. 20 U.S.C. § 1401(9)(B) & (D), (26)(A). V.T.'s IEP did not mention any intolerance of long car rides, and a placement is not inappropriate simply because a school district fails to anticipate concerns on which the IEP is silent. This is especially true here, as the IEP specifically called for transportation services without flagging any distinctive concerns about the length of V.T.'s commute.

Second, J.T. argues that Frost and CSM would have been too noisy. J.T. testified that the noise was "quite overwhelming" at Frost, while students at CSM were largely nonverbal and communicated by making noise. J.A. 534, 593. In response, Barlow testified that Frost was able to implement the IEP in full, and Murtha testified that CSM could do likewise. More specifically, Murtha testified that V.T.'s classroom would have had only one nonverbal student, and CSM has procedures in place to minimize noise. This dispute boils down to conflicting testimony, and we must give "due weight" to the hearing officer's credibility determinations. *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982). Here, the officer credited the testimony of Barlow and Murtha over that of J.T. He reasoned that Barlow and Murtha were more knowledgeable and testified consistently, whereas J.T. failed to work with DCPS and gave inconsistent testimony. We decline to second-guess this reasonable credibility determination.[1]

Third, J.T. claims that the classroom size at Frost and CSM would have been too large. She testified that she had observed seven students in the classroom at both schools. But Barlow and Murtha testified that V.T. would have been the sixth child in his class at Frost or CSM respectively. Again, the dispute turns on conflicting testimony, and the hearing officer reasonably credited that of Barlow and Murtha.

For these reasons, we affirm the district court's judgment. Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or petition for rehearing *en banc*. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41(a)(1).

FOR THE COURT:
Mark J. Langer, Clerk

BY:  /s/
Daniel J. Reidy
Deputy Clerk

---

[1] Barlow also gave hearsay testimony that CSM could implement the IEP. J.T. contends that this violated her statutory right to confront and cross-examine witnesses. *See* 20 U.S.C. § 1415(h)(2). But the hearing officer also relied on Murtha's testimony that CSM could implement the IEP, and J.T. does not dispute the admissibility of his testimony. Thus, any error in admitting Barlow's statement was harmless.